IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MADHURI KASIREDDY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 09 C 7940 |
| | ) |
| BANK OF AMERICA CORPORATION | ) |
| CORPORATE BENEFITS COMMITTEE,[1] | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

*Pro se* plaintiff Madhuri Kasireddy ("Kasireddy"), in her complaint filed on December

23, 2009 (Dkt. No. 1), alleges that defendant Bank of America Corporation Corporate Benefits

Committee ("CBC") violated § 104(b)(4) of the Employee Retirement Income Security Act

("ERISA"), 29 U.S.C. § 1024(b)(4), by failing to provide Kasireddy, an employee of Bank of

America Corporation (the "Bank"), with information about her employer sponsored health care

plan in response to her written request for such information. On March 3, 2010, prior to any

discovery, Kasireddy filed the current pending motion for summary judgment titled

"PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT." (Dkt. No. 14.) On April 30, 2010,

---

[1] The parties dispute whether the proper defendant in this case is the benefits plan itself, Bank of America Group Benefits Program ("Program"), which the plaintiff did not sue, or the plan administrator, Bank of America Corporation Corporate Benefits Committee ("CBC"), which the plaintiff has sued. Because plaintiff Madhuri Kasireddy seeks statutory penalties against the plan administrator pursuant to 29 U.S.C. § 1132(c)(1), the court finds that the plan administrator, CBC, is the proper defendant. *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009). From the inception of this case, the Program has represented itself to be the proper defendant and contended that it had been "incorrectly named as Bank of America Corporation Corporate Benefits Committee." (*See, e.g.*, Dkt. Nos. 6, 7, 11.) Defendant CBC has not filed an appearance in this case and, after being properly served, has allowed the Program to file the answer (Dkt. No. 12) and defend the case. Consequently, the pending motion for summary judgment is deemed to have been filed by the Committee, the only named defendant in this case. To hold otherwise would require a finding that the Committee has not filed an answer and is therefore in default. The court will proceed to make a determination on the pending motion for summary judgment.

CBC filed the pending cross-motion for summary judgment titled "DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT." (Dkt. No. 24.) Both motions (Dkt. No. 14, Dkt. No. 24) are now fully-briefed before this court.

For the reasons set forth below, this court grants in part and denies in part Kasireddy's motion for summary judgment. Additionally, this court grants in part and denies in part CBC's cross motion for summary judgment.

BACKGROUND

In light of the parties' cross motions for summary judgment and this court's obligation to view the evidence in the light most favorable to the nonmoving party, the following are the undisputed facts of this lawsuit. Kasireddy is employed by the Bank (Dkt. No. 26 ("Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Mat. Facts") ¶ 2) and CBC is the administrator (*id.* ¶ 4) for the health care plan sponsored by the Bank, in which Kasireddy is currently enrolled.

In 2008, the Bank of America Group Benefits Program ("Program") informed the Bank's employees that the Bank was changing the medical benefit plan options offered to employees. (*Id.* ¶ 13; Dkt. No. 27 ("Def.'s LR 56.1 Stmt. of Mat. Facts") ¶ 7.) At the time, Kasireddy was enrolled in the Blue Cross Blue Shield Health Plan (the "Blue Cross Plan") that was offered by the Bank to its employees. (Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Mat. Facts ¶ 12; Def.'s LR 56.1 Stmt. of Mat. Facts ¶ 6.) According to information distributed by the Program, the Bank would no longer offer the Blue Cross Plan after December 31, 2008. (Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Mat. Facts ¶ 13.) In its place, the Bank, effective January 1, 2009, would offer its eligible employees a choice between the Aetna Comprehensive Traditional Plan and the Aetna Comprehensive High Deductible Plan. (*Id.*) Kasireddy selected and enrolled in the Aetna Comprehensive Traditional Plan (the "Aetna Plan"). (*Id.* ¶ 14.)

CBC received a letter from Kasireddy, dated March 2, 2009, in which Kasireddy requested the "Plan Document pertaining to the Aetna Comprehensive Traditional Plan"[2] so that she may "review coverages[*sic*] under [her] medical plan." (*Id.* ¶ 20; Def.'s LR 56.1 Stmt. of Mat. Facts ¶ 9). On April 2, 2009, CBC responded to Kasireddy's letter by mailing her copies of the following five documents (the "April Documents"):

1. Bank of America Associate Handbook 2005 (Pl.'s Ex. A1 ("2005 Associate Handbook"));

2. Bank of America 2006 Addendum to Associate Handbook (Pl.'s Ex. A2 ("2006 Addendum"));

3. Bank of America Summary of Material Modifications (Pl.'s Ex. A3 ("Summary of Modifications"));

4. Your Benefits, A Look Ahead to 2009 Brochure (Pl.'s Ex. A4 ("Your Benefits Brochure"));

5. Annual Enrollment Brochure – Your Choices for 2009 (Pl.'s Ex. A5 ("Enrollment Brochure")).

(Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Mat. Facts ¶ 21.) CBC further directed Kasireddy to contact the Personnel Center or visit the Aetna website for more detailed information. (*Id.* ¶ 27.)

On April 22, 2009 and June 24, 2009, Kasireddy sent additional letters to CBC, again requesting "Plan Documents pertaining to the Aetna Comprehensive Traditional Plan" so that Kasireddy may "review coverages[*sic*] under [her] Medical Plan." (Def.'s Resp. to Pl.'s LR. 56.1

---

[2] There is a discrepancy between the various documents filed by Kasireddy as to when Kasireddy actually sent this letter. According to Kasireddy's Complaint and Exhibit D, attached to Kasireddy's Local Rule 56.1 Statement of Undisputed Material Facts, Kasireddy sent the letter on March 2, 2009. (*See* Dkt. No. 1 ("Kasireddy's Compl.") ¶ 16.) However, in Kasireddy's Local Rule 56.1 Statement of Undisputed Material Facts, Kasireddy claims she sent the letter on March 20, 2009. (Dkt. No. 16 (pp. 17-25) ("Pl.'s LR 56.1 Stmt. of Mat. Facts") ¶ 20.) CBC agrees with the March 2, 2009 date from Kasireddy's Complaint and Exhibit D. (Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Mat. Facts ¶ 20.) Since CBC's agreement inures to the benefit of Kasireddy, this court will assume March 2, 2009 as the date when Kasireddy sent this letter to CBC.

Stmt. of Mat. Facts ¶¶ 28, 30; Pl.'s Exs. F & G.)  In response, CBC, on July 9, 2009, mailed

Kasireddy the following three documents (the "July Documents"):

1. Annual Enrollment Guide: Get Ready for 2009 (Pl.'s Ex. B1 ("2009 Enrollment

    Guide"));

2. Aetna Comprehensive Traditional Summary of Benefits (Pl.'s Ex. B2 ("Aetna Plan

    Summary of Benefits"));

3. Your Medical Plan Options: A Closer Look (Pl.'s Ex. B3 ("Medical Options Guide")).


(Def.'s Resp. to Pl.'s LR. 56.1 Stmt. of Mat. Facts ¶ 31.)  CBC further informed Kasireddy that

"[t]hese documents, as well as the documents sent to you on April 2, 2009, currently serve as the

plan documents for the Aetna Comprehensive Traditional Plan."  (*Id*.; *see also* Pl.'s Ex. H.)

On December 23, 2009, Kasireddy filed this pending lawsuit alleging in her complaint

that CBC still has not provided her with "Official Plan document[s]" pertaining to the Aetna

Plan and therefore, is in violation of 29 U.S.C. § 1024(b)(4).  (Kasireddy's Compl. ¶¶ 24, 28,

30.)  In her complaint, Kasireddy seeks the following relief: (1) an "[o]rder directing Defendant

forthwith to provide a copy of Plan Documents," (2) "[j]udgment assessing penalties against

Defendant based upon the maximum $110 per day rate, for failure to comply with ERISA from

April 1, 2009 till the date the Defendant furnishes Plaintiff with Plan Documents," (3) "[t]hat the

court award Plaintiff costs of maintaining this action including attorney fees if applicable," and

(4) "[t]hat the court award Plaintiff such other relief as the court deems appropriate and just."

(*Id*. at 5.)

Before conducting any discovery, both parties submitted the pending motions for

summary judgment on all of the claims in Kasireddy's Complaint.  (Dkt. No. 14; Dkt. No. 24.)

Each party in support of its motion for summary judgment submitted various exhibits, including the relevant portions of the April and July Documents.  This court notes that neither party contests the authenticity or admissibility of any documents submitted as exhibits.  Furthermore, this court notes that neither party argues that a genuine issue of material fact exists that would preclude this court from granting summary judgment to either party.

For the reasons set forth below, this court finds that CBC violated 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1132(c)(1) by failing to provide Kasireddy with the summary plan description for the Aetna Plan within 30 days of receiving Kasireddy's March 2, 2009 written request for plan documents.  Pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1, this court finds in favor of Kasireddy in the amount of $10,560; such sum representing the maximum statutory fine of $110 per day for CBC's failure to mail Kasireddy the Aetna Plan's summary plan description for the period from April 3, 2009 and July 9, 2009.  With respect to Kasireddy's request for an order directing CBC to "provide a copy of Plan Documents," this court finds in favor of CBC, in light of the court's finding that CBC discharged its statutory obligations under 29 U.S.C. § 1024(b)(4) on July 9, 2009, by mailing to Kasireddy all of the relevant documents that constitute the Aetna Plan's summary plan description.  With regards to Kasireddy's request for attorney fees and court costs, this court awards Kasireddy court costs but denies *pro se* plaintiff  Kasireddy's request for attorney fees.  This court denies CBC's request for attorney fees and court costs, as there was substantial merit to Kasireddy's claims.

<u>LEGAL STANDARD</u>

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the non-movant's favor. *Omega Healthcare Investors, Inc. v. Res-Case, Inc.,* 475 F.3d 853, 857 (7th Cir. 2007). However, "[o]nce a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" *Harney v. Speedway SuperAm., L.L.C.*, 526 F.3d 1099, 1104 (7th Cir. 2008) (quoting Fed. R. Civ. P. 56(e)).

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Instead, it only determines whether a genuine issue of material fact exists for trial, or in other words, whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996). The evidence relied upon must be competent evidence of a type otherwise admissible at trial. *Id.*

<u>ANALYSIS</u>

1.  <u>CBC's Obligation under ERISA to Provide the Summary Plan Document</u>

Section 104(b)(4) of ERISA, 29 U.S.C. § 1024(b)(4), states the following:

The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract or other instruments under which the plan is established or operated.[3]

---

[3] While the statute technically reads "summary, plan description," courts have interpreted the statute as intending to state "summary plan description." *See e.g. Kollman v. Hewitt Assocs.*, 487 F.3d 139, 143-45 (3rd Cir. 2007); *Killian v. Concert Health Plan Ins. Co.*, No. 07 C 4755, 2010 WL 2681107, at *3 (N.D. Ill. July 6, 2010) (Aspen, J.). Furthermore, neither party argues that the court should interpret the statute as "summary, plan description."

For purposes of 29 U.S.C. § 1024(b)(4), both parties agree that CBC is a plan administrator and Kasireddy is a participant. (Def.'s Resp. to Pl.'s LR 56.1 Stmt. of Mat. Facts ¶¶ 3, 14.) Furthermore, both parties agree that on March 2, 2009, April 22, 2009, and June 24, 2009, Kasireddy made written requests to CBC for the "Plan Document[s] pertaining to her medical plan Aetna Comprehensive Traditional Plan" so that she may "review [her] coverages[*sic*] under [her] medical plan." (*Id*. ¶¶ 20, 28, 30.) However, the parties dispute what type of document CBC was required to provide to Kasireddy upon receiving her written requests, pursuant to 29 U.S.C. § 1024(b)(4).

Kasireddy argues that CBC was required under § 1024(b)(4) to provide her the Aetna Plan's "official plan document[s]." (Kasireddy's Compl. ¶ 28.) Kasireddy's choice of language is not surprising, given that the 2005 Associate Handbook states the following:

> Each of your ERISA-covered benefit plans is based on a *plan document*. [ . . . ] If a plan provision described in this handbook disagrees with the *official plan document*, the wording of the *official plan document* always governs. For information about how to obtain a copy of a *plan document*, see "Receiving information about your plan and benefits" earlier in this chapter.

(Pl.'s Ex. A1 at 191 (emphasis added).) In response, CBC claims that there is no document titled "Plan document" or "official plan document." (Dkt. No. 25 ("Def.'s Mem. in Supp. of Summ. J.") at 7.) Rather, CBC claims that the Aetna Plan's "plan document" consists of multiple documents, and CBC interprets § 1024(b)(4) to only require it to provide Kasireddy with the Aetna Plan's latest summary plan description that was in its possession at the time it received Kasireddy's request. (*Id*. at 5-6.) In accordance with this obligation, CBC argues that it fulfilled its § 1024(b)(4) obligations by sending Kasireddy the April and July Documents, which CBC argues "constitute the Summary Plan Description for [the Aetna Plan]." (*Id*. at 5.)

The court agrees with CBC's interpretation of § 1024(b)(4), finding that CBC was only required to provide Kasireddy with the Aetna Plan's summary plan description. Specifically, a

defendant's "affirmative obligation to disclose materials under ERISA, punishable by penalties, extends only to [the] defined set of documents" in § 1024(b)(4) that a participant has clearly requested. *Ames v. Am. Nat'l Can Co.*, 170 F.3d 751, 759 (7th Cir. 1999); *see Anderson v. Flexel*, 47 F.3d 243, 248 (7th Cir. 1995) (stating that § 1024(b)(4) only requires an administrator to respond to a participant's document request "when [the request] gives the administrator clear notice of what information the beneficiary desires.").

In each of her letters to CBC, Kasireddy requested the "Plan document[s]" that would allow her to "review coverages [*sic*] under [her] medical plan." (Def.'s LR 56.1 Stmt. of Mat. Facts ¶¶ 9, 13, 14.) While § 1024(b)(4) does not contain the exact words "plan document," § 1024(b)(4) does provide for a "summary plan description" which is required to include information regarding medical coverage. Specifically, 29 C.F.R. § 2520.102-3, issued by the Secretary of the Department of Labor pursuant to a 29 U.S.C. § 1029(c), clearly states that a summary plan description "shall" include the following information:

> a description of: any cost-sharing provisions, including premiums, deductibles, coinsurance, and copayment amounts for which the participant or beneficiary will be responsible; any annual or lifetime caps or other limits on benefits under the plan; the extent to *which preventive services are covered* under the plan; *whether, and under what circumstances, existing and new drugs are covered* under the plan; *whether, and under what circumstances, coverage is provided for medical tests, devices and procedures*; provisions governing the use of network providers, the composition of the provider network, and *whether, and under what circumstances, coverage is provided for out-of-network services*; any conditions or limits on the selection of primary care providers or providers of specialty medical care; any conditions or limits applicable to obtaining emergency medical care; and any provisions requiring preauthorizations or utilization review as a condition to obtaining a benefit or service under the plan. In the case of plans with provider networks, the listing of providers may be furnished as a separate document that accompanies the plan's SPD, provided that the summary plan description contains a general description of the provider network and provided further that the SPD contains a statement that provider lists are furnished automatically, without charge, as a separate document.

*Id.* (emphasis added). In light of the medical coverage information required to be set forth in a summary plan description, and Kasireddy's clear request for medical coverage information, this

court finds that under 29 U.S.C. § 1024(b)(4), CBC was required to provide Kasireddy with

"each and every document that . . . would constitute the Summary Plan Description" for the

Aetna Plan. (Def.'s Mem. in Supp. of Summ. J. at 5, 9.) Kasireddy does not argue that she is

entitled to any other documents listed in 29 U.S.C. § 1024(b)(4), such as annual reports, terminal

reports, bargaining agreements, or trust agreements.

Kasireddy's request for the "official plan documents" is understandable, because the

2005 Associate Handbook, along with several other documents provided by CBC to Kasireddy,

clearly states that the provisions of the "official plan document always governs." (2005

Associate Handbook at 191; *see also, e.g*., 2006 Addendum at 15; 2009 Enrollment Guide at 29.)

To make "informed decisions based on coverage's [*sic*] in [the Aetna Plan]," (Dkt. No. 16 (pp.

1-15) ("Kasireddy's Mem. in Support of Summ. J.") at 2), Kasireddy needed accurate coverage

information for the Aetna Plan. Kasireddy is entitled to rely on the Aetna Plan's summary plan

description to make these "informed decisions," as "[i]n the event [a summary plan description]

directly conflicts with the plan text, . . . this Circuit has consistently held that the summary

controls because it is the document participants read and rely upon." *Young v. Verizon's Bell Atl.

Cash Balance Plan*, 667 F. Supp. 2d 850, 898 (N.D. Ill. Nov. 2, 2009) (Denlow, J.) (citing

*Helfrich v. Carle Clinic Assoc., P.C.,* 328 F.3d 915, 916 (7th Cir. 2003); *Mers v. Marriott Int'l Group

Accidental Death & Dismemberment Plan,* 144 F.3d 1014, 1023 (7th Cir. 1998); *Mathews v. Sears Pension Plan,*

144 F.3d 461, 466 (7th Cir. 1998) ("plan summary generally controls in the case of a conflict with the plan itself . . .

."); *Senkier v. Hartford Life & Acc. Ins. Co.,* 948 F.2d 1050, 1051 (7th Cir. 1991)).

Before this court addresses whether the April or July Documents satisfy CBC's

obligation to provide Kasireddy with the Aetna Plan's summary plan description, this court notes

that 29 C.F.R. § 2520.102-3 also requires information in a summary plan description that

Kasireddy did not request, nor currently seeks. For example, 29 C.F.R. § 2520.102-3 requires a

summary plan description to include a list of providers; however, Kasireddy only argues that the Aetna Plan's summary plan description must include medical coverage information regarding fertility treatments and information regarding appeals procedures for denial of claims. (Kasireddy's Compl. ¶¶ 11, 12; Kasireddy's Mem. in Supp. of Summ. J. at 8.) Therefore, this court focuses its review on whether the purported summary plan description mailed by CBC to Kasireddy included the following: (1) information about the Aetna Plan's medical coverage pursuant to 29 U.S.C. § 1022(b), 29 U.S.C. § 1029(c), and 29 C.F.R. § 2520.102-3 and (2) information about applicable appeals procedures for denial of claims pursuant to 29 U.S.C. § 1022(b).

     a.    <u>April Documents</u>

Kasireddy argues that three of the five April Documents—the 2005 Associate Handbook, the 2006 Addendum, and the Summary of Modifications (collectively referred to as the "Associate Handbook")—are all dated prior to the introduction of the Aetna Plan and thus, cannot serve as the summary plan description. CBC disagrees and argues that "the fact that the summary plan description contained within the [Associate Handbook] does not specifically refer to the Aetna Plan is irrelevant." (Def.'s Mem. in Supp. of Summ. J. at 7.) According to CBC, the Associate Handbook is an "Incorporated Document into a larger, ERISA plan." (*Id*.) Furthermore, CBC argues that 29 C.F.R. § 2520.104b-3 permits CBC until July 10, 2010 to update the Associate Handbook with explicit references to the Aetna Plan. (*Id*. at 8.) Therefore, CBC argues that it fulfilled its 29 U.S.C. § 1024(b)(4) obligations by providing Kasireddy with the Associate Handbook, along with the other April Documents. This court disagrees.

As a preliminary matter, 29 C.F.R. § 2520.104b-3 is inapplicable to the facts of this case. 29 C.F.R. § 2520.104b-3 states the following:

The administrator . . . shall . . . furnish a summary description of any material modification to the plan and any change in the information . . . to each participant covered under the plan and each beneficiary receiving benefits under the plan. Except as otherwise provided in subparagraph (d) of this section, the plan administrator shall furnish this summary, written in a manner calculated to be understood by the average plan participant, not later than 210 days after the close of the plan year in which the modification or change was adopted.

This regulation applies to CBC's *affirmative* obligation to proactively provide information to participants regarding a "material modification" or a "change in [ ] information" absent a request from a participant for a specific document. Section 2520.104b-3 has no bearing on an administrator's obligation to respond to a participant's written request pursuant to 29 U.S.C. § 1024(b)(4). *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995) (discussing documents that must be *automatically* provided to participants). Here, Kasireddy, a participant, requested the summary plan description for the Aetna Plan from CBC, a plan administrator. Moreover, § 2520.104b-3 describes an administrator's obligation to communicate "material modification[s]" or "change[s] in [ ] information." In this lawsuit, the issue is whether CBC provided Kasireddy with the Aetna Plan's summary plan description. The issue is not whether CBC was obligated to provide Kasireddy with information about material modifications to the Aetna Plan's summary plan description. Quite simply, 29 C.F.R. § 2520.104b-3 is inapplicable to the facts of this lawsuit. This court will now address whether the April Documents, individually or as a whole, satisfy CBC's obligation to provide Kasireddy with the Aetna Plan's summary plan description.

At a basic level, the Associate Handbook, in and of itself, cannot function as the summary plan description for the Aetna Plan because it does not contain any references to the Aetna Plan, nor does it contain any references to the medical coverage provided by the Aetna Plan. *See* 29 U.S.C. § 1022(a) (stating that a "summary plan description shall contain . . . the name . . . of the plan); *see also* 29 C.F.R. § 2520.102-3(a) (requiring a summary plan description

to contain the name of the plan).  While the Associate Handbook does contain several pages of coverage information for various health plans, not one of these pages references the Aetna Plan. (*See* 2005 Associate Handbook at 46-55.)  This is not surprising, since the Associate Handbook is dated prior to the introduction of the Aetna Plan, and CBC admits that it was not going to issue a revised Associate Handbook until "mid-year 2010."  (Dkt. No. 28 ("Decl. of Freda S. White") ¶ 14.)  As the Seventh Circuit and the Supreme Court have stated, a document for purposes of ERISA is "one which a plan participant could read to determine his or her rights under the plan."  *Fritcher v. Health Care Servs. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) (citing *Curtiss Wright Corp. v. Schoonejongen,* 514 U.S. 73, 83 (1995)).   Obviously, without specific references to the Aetna Plan, Kasireddy cannot determine her medical coverage under the Aetna Plan.  Furthermore, CBC does not cite any statute, regulation, or case law stating that an administrator can satisfy its 29 U.S.C. § 1024(b)(4) obligation by providing a participant with documents that either: (1) only contain coverage information for medical health plans that do not apply to the participant or (2) are not in compliance with 29 U.S.C. § 1022 or 29 C.F.R. § 2520.102-3.

While the Associate Handbook does not contain the required coverage information for the Aetna Plan, the Associate Handbook does contain general information regarding the appeals procedures for denial of claims as required by 29 U.S.C. § 1022(b).  Specifically, the Associate Handbook states that "requests to review denied claims (appeals) for group health plans . . . should be directed to the insurance company . . . that insures or administers the plan at the address listed on the notice of claim denial."  (2005 Associate Handbook at 192.)  While the statement regarding the appeals process is a general statement with no specific references to the Aetna Plan, Kasireddy does not argue that this information regarding the appeals process is not

applicable to the Aetna Plan. Thus, this court finds that CBC did provide Kasireddy with information about the Aetna Plan's appeals process within 30 days of her March 2, 2009 written request. However, the Associate Handbook, in and of itself, cannot serve as the Aetna Plan's summary plan description without further information about the Aetna Plan's medical coverage.

Finally, the remaining April Documents—Your Benefits Brochure and Enrollment Brochure—also do not satisfy CBC's obligation to provide Kasireddy with the Aetna Plan's coverage information as required by a summary plan description. The Your Benefits Brochure only generally discusses the Bank's selection of Aetna as the primary provider for all medical insurance; this document does not contain any specific references to the Aetna Plan nor any coverage information specific to the Aetna Plan. While the Enrollment Brochure does specifically reference the Aetna Plan, it only includes the following summary language regarding the Aetna Plan: (1) "Higher paycheck contributions," (2) "Lower costs when receiving care," and (3) "Most similar to the 2008 HMO, PPO and EPO." (Enrollment Brochure at 2.) Clearly, the Annual Enrollment Brochure does not provide coverage information specific to the Aetna Plan, as required by 29 C.F.R. § 2520.102-3.

  b. <u>July Documents</u>

Next, CBC argues that the July Documents satisfy its obligation under 29 U.S.C. § 1024(b)(4) to provide Kasireddy with the Aetna Plan's medical coverage information as required to be contained in the Aetna Plan's summary plan description. Kasireddy disagrees and claims that the July Documents are mere summaries of the medical coverage provided by the Aetna Plan. Kasireddy argues that any document purporting to be the Aetna Plan's summary plan description must include the details of fertility treatments that are covered and are not covered by

the Aetna Plan. According to Kasireddy, the July Documents do not provide these fertility coverage details and thus, cannot serve as the summary plan description for the Aetna Plan. This court disagrees.

A summary plan description "is not required to anticipate every possible idiosyncratic contingency that might affect a particular participant's or beneficiary's status." *Lorenzen v. Employees Ret. Plan of the Sperry & Hutchinson Co.*, 896 F.2d 228, 236 (7th Cir. 1990). Rather, a summary plan description is "a capsule guide in simple language for employees" and "larding the summary with minutiae would defeat the document's function." *Herrmann v. Cencom Cable Assocs., Inc.*, 978 F.2d 978, 984 (7th Cir. 1992). In the instant matter, CBC was required to provide Kasireddy with a summary plan description that provides sufficient detail regarding Kasireddy's medical coverage under the Aetna Plan without destroying its purpose of being a summary. Thus, in light of Kasireddy's written requests for coverage information regarding medical procedures and treatments, this court finds that the July Documents satisfy CBC's obligation to provide Kasireddy with coverage information for the Aetna Plan.

As a general matter, the Aetna Plan Summary of Benefits, in and of itself, includes much of the information required to be in a summary plan description including but not limited to: co-pays, deductibles, lifetime caps on benefits, coverage information for various medical procedures, and drug coverage information. Furthermore, the Aetna Plan Summary of Benefits includes in-network and out-of-network coverage information for in vitro fertilization and artificial insemination. (Aetna Plan Summary of Benefits at 3.) Additionally, this same document provides information about prescription drug coverage including: a website address listing the various covered prescription drugs, a phone number for prescription drug coverage information, and specific information regarding the coverage limits for fertility drugs. (*Id*. at 4.)

While Kasireddy may be disappointed that the Aetna Plan Summary of Benefits does not provide the level of detail she requires to answer her detailed questions regarding specific types of fertility treatments, the Aetna Plan Summary of Benefits does provide coverage information that satisfies the requirements of 29 C.F.R. § 2520.102-3. Moreover, the Aetna Plan Summary of Benefits includes such information as phone numbers and website addresses that can further assist Kasireddy with answering her specific coverage questions; Kasireddy does not argue otherwise. (*See id*. at 1, 4.)

It should be noted, as previously mentioned, this court is only finding that CBC satisfied its 29 U.S.C. § 1024(b)(4) obligations within the context of the specific facts and arguments of this case. This court is not deciding as a general matter whether the April and July Documents could satisfy CBC's 29 U.S.C. § 1024(b)(4) obligations upon CBC receiving a written request from *any* Bank employee for the Aetna Plan's summary plan description. Kasireddy only argues that the April and July Documents do not constitute a summary plan description for the Aetna Plan because the April and July Documents do not contain detailed coverage information for specific fertility treatments and do not contain information about appeals procedures. Kasireddy does not argue that the April and July Documents do not comply with other relevant statutes, such as 29 U.S.C. § 1022(a), which states that a summary plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Nor does Kasireddy argue that a summary plan description cannot consist of multiple documents or that the April and July Documents, taken as a whole, are not "calculated to be understood by the average plan participant." *See id*. Thus, this court makes no findings and expresses no opinion as to whether the April and July Documents meet all of the statutory and regulatory requirements of a summary plan description for the Aetna Plan.

In summary, CBC fulfilled its obligation under 29 U.S.C. § 1024(b)(4) by providing Kasireddy with the Aetna Plan Summary of Benefits, which contains medical coverage information for the Aetna Plan, and the Associate Handbook, which contains information regarding the appeals process for a denial of claims. This court will now address Kasireddy's request for the imposition of fines pursuant to 29 U.S.C. § 1132(c)(1).

2.    Statutory Fines

29 U.S.C. § 1132(c)(1) states the following:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Pursuant to the Secretary's statutory authority in 29 U.S.C. § 1135, the Department of Labor in 29 C.F.R. § 2575.502c-1 increased the fine to $110 per day. When deciding whether to impose a fine under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), courts consider a number of factors including: "bad faith or intentional conduct on the part of the administrator, the length of the delay, the number of requests made and documents withheld, and the existence of any prejudice to the participant or beneficiary." *Jackson v. E.J. Branch Corp.*, 937 F. Supp. 735, 741 (N.D. Ill. Aug. 15, 1996) (Moran, J.) (quoting *Pagovich v. Moskowitz*, 865 F. Supp. 130, 137 (S.D.N.Y. 1994)). This court finds that CBC's unexcused, delayed response to Kasireddy's repeated written requests for the Aetna Plan's summary plan description warrants the imposition of the maximum statutory fine of $110 per day against CBC for the time period between April 3, 2009 and July 9, 2009.

First, this court is dismayed that Kasireddy was only able to obtain the summary plan description for the Aetna Plan after making three written requests to CBC. After the first written request, CBC sent Kasireddy information about medical plans that were not even offered to Kasireddy. The purpose of the § 1024(b)(4) is to ensure that participants have sufficient information to understand their rights under an ERISA covered plan. *Fritcher,* 301 F.3d at 817. However, this purpose is completely contravened if a plan administrator can fulfill its § 1024(b)(4) obligation by solely providing a participant with information that does not even apply to a participant's plan.

Furthermore, this court is disappointed that CBC sent Kasireddy the April Documents after a "thorough investigation into what documents existed that were responsive to [Kasireddy's request]." (Dkt. No. 28 ("Declaration of Freda S. White") ¶ 15.) Even a cursory review of the April Documents reveals that not one of the April Documents contains coverage information for the Aetna Plan and nothing in CBC's admissions and arguments even hints that the April Documents were sent to Kasireddy by mistake. Actually, CBC's argument suggests bad faith, in that it appears that CBC knowingly sent Kasireddy documents that did not contain coverage information specific to the Aetna Plan. Quite simply, this court fails to see how CBC can discharge its statutory obligations under § 1024(b)(4) by solely providing Kasireddy with information that does not even apply to the Aetna Plan.

Finally, CBC admits to receiving Kasireddy's letters on March 2, 2009, April 22, 2009 and June 24, 2009 and then not responding until July 9, 2009 with the Aetna Plan Summary of Benefits. The Seventh Circuit has stated that "[w]e emphasize that fines may be necessary to make employers take seriously their disclosure obligation when an actual lack of information results from the employer's reluctance to respond to a request for information." *Ames v. Am.*

*Nat'l Can Co.*, 170 F.3d 751, 760 (7th Cir. 1999). In the current lawsuit, it took over 90 days and three written requests for Kasireddy to obtain basic information regarding the Aetna Plan. CBC's only response within 30 days was documents with over 300 pages of information that only contained three phrases about the Aetna Plan. Kasireddy cannot reasonably begin to find answers to her specific coverage questions without such basic information as the Aetna Plan's phone number for drug coverage information. Not until Kasireddy received the July Documents did CBC provide Kasireddy with information that would be helpful to her in answering her specific questions regarding medical coverage under the Aetna Plan. This court finds that CBC's conduct warrants the imposition of the maximum fine of $110 per day against CBC for the time period between April 3, 2009 and July 9, 2009.

3.      Attorney Fees and Costs

Kasireddy, in her Complaint, requests both attorney fees and courts costs. (Kasireddy's Compl. at 5.) Since Kasireddy is a *pro se* plaintiff and has not presented any evidence of incurring attorney fees, this court denies Kasireddy's request for attorney fees. However, pursuant to Fed. R. Civ. P. 54(d)(1), this court awards Kasireddy costs other than attorney fees. Kasireddy should file a bill of costs with this court that includes costs, other than attorney fees, that are permissible under 28 U.S.C. § 1920.

CONCLUSION

For the aforementioned reasons, this court finds that CBC violated 29 U.S.C. § 1024(b)(4) and 29 U.S.C. § 1132(c)(1) by failing to provide Kasireddy with the summary plan description for the Aetna Plan within 30 days of receiving Kasireddy's March 2, 2009 written request for plan documents. Pursuant to 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1, this court finds in favor of Kasireddy in the amount of $10,560; such sum representing the

maximum statutory fine of $110 per day for CBC's failure to mail Kasireddy the Aetna Plan's summary plan description for the ninety-six day period from April 3, 2009 to July 9, 2009. With respect to Kasireddy's request for an order directing CBC to "provide a copy of Plan Documents," this court finds in favor of CBC, in light of the court's finding that CBC discharged its statutory obligations under 29 U.S.C. § 1024(b)(4) on July 9, 2009, by mailing to Kasireddy all of the relevant documents that constitute the Aetna Plan's summary plan description. With regards to Kasireddy's request for attorney fees and court costs, this court awards Kasireddy court costs but denies *pro se* plaintiff Kasireddy's request for attorney fees. This court also denies CBC's request for attorney fees and court costs, as there was substantial merit to Kasireddy's claims.

This is a final and appealable order.


ENTER:


James F. Holderman

JAMES F. HOLDERMAN
Chief Judge, United States District Court


DATE: October 13, 2010